**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

**SPRAY, GOULD & BOWERS LLP**
Darren M. Harris (SBN 190399)
dharris@sgblaw.com
2 Corporate Park, Suite 201
Irvine, CA 92606
Telephone:   (949) 387-4444
Facsimile:   (949) 387-4544

*Attorneys for Plaintiff,* JAYD SCHROEDER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYD SCHROEDER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS PARCHER, an individual;<br>STEVEN WRIGHT, an individual; and<br>DOES 1-20, inclusive,<br><br>Defendants. | Case No. 5:18-cv-00427-DMG-SP<br><br>[*The Honorable Dolly M. Gee*]<br><br>**PLAINTIFF JAYD SCHROEDER'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988**<br><br>[*Declarations and attached Exhibits; and Proposed Order filed concurrently herewith*]<br><br>Date:   July 22, 2019<br>Time:   02:00 p.m.<br>Crtrm:  8C |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on July 22, 2019 at 02:00 p.m. in Courtroom 8C, located at 350 West 1st Street, Los Angeles, CA 90012, Plaintiff JAYD SCHROEDER ("Plaintiff") will and hereby moves this Court for an Order awarding

5:18-cv-00427-DMG-SP

reasonable attorneys' fees and costs pursuant to 42 U.S.C. Section 1988 and Federal Rule of Civil Procedure 54(d).  This Motion is based on grounds that the Plaintiff was the prevailing party at trial on his civil rights claims and is entitled to statutory attorney fees as a matter of law.

**Statement of Local Rule 7-3 Compliance**: Plaintiff's counsel contacted opposing counsel by both telephone and email advising them that we are filing this motion.

This Motion will be further based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations, the attached exhibits, upon the pleadings on file herein, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

DATED: June 21, 2019

**LAW OFFICES OF DALE K. GALIPO**
**SPRAY, GOULD & BOWERS LLP**

/s/     *Marcel F. Sincich*
Dale K. Galipo
Darren M. Harris
Marcel F. Sincich
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**................................................ 1

I.   INTRODUCTION ................................................................................... 1

II.  LEGAL STANDARD ............................................................................. 4

    A.   Legislative History of 42 U.S.C. § 1988 .................................... 4

    B.   The Supreme Court's Standard in *Hensley v. Eckerhart*.................... 5

III. ANALYSIS ............................................................................................ 6

    A.   Plaintiff Schroeder is the Prevailing Party and is Entitled to Attorney's Fees ........................................................................... 6

    B.   The Court Should Be Guided by a "Lodestar" Computation ................. 7

    C.   The Relevant Legal Community Governs Reasonable Rates ............... 8

        *1.   Hourly Rate for Dale K. Galipo.* ..................................... 8

        *2.   Hourly Rate for Darren M. Harris.* .............................. 14

        *3.   Hourly Rate for Marcel F. Sincich.* .............................. 15

        *4.   Hourly Rate for Renee V. Masongsong* ....................... 18

    D.   The Number of Hours Claimed is Reasonable. ............................... 22

    E.   Plaintiff is Entitled to Fees for Litigating the Instant Motion ............. 23

IV.  CONCLUSION ..................................................................................... 24

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ballen v. City of Redmond,*
    466 F.3d 736 (9th Cir. 2006) ......................................................................... 7

*Blum v. Stenson,*
    465 U.S. 886 (1984) ........................................................................................ 8

*Bouman v. Block,*
    940 F.2d 1211 (9th Cir. 1991) ....................................................................... 5

*Brewster v. Dukakis,*
    786 F.2d 16, 18 (1st Cir. 1986) ..................................................................... 6

*City of Riverside v. Rivera,*
    477 U.S. 561, 581 (1986) ............................................................................... 5

*Dang v. Cross,*
    422 F.3d 800 (9th Cir. 2005) ......................................................................... 8

*Farrar v. Hobby,*
    506 U.S. 103 (1992) ........................................................................................ 7

*Glass v. Pfeffer,*
    849 F.2d 1261 (10th Cir. 1988) ................................................................... 23

*Guam Society of Obstetricians & Gynecologists v. Ada,*
    100 F.3d 691 (9th Cir. 1996) ......................................................................... 5

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) .................................................................................... 5, 6

*Hernandez v. George,*
    793 F.2d 264 (10th Cir. 1986) ..................................................................... 23

*Hernandez v. Kalinowski,*
    146 F.3d 196 (3rd Cir. 1998) ....................................................................... 23

*Jordan v. Multnomah Cnty.,*
    815 F.2d 1258 (9th Cir. 1987) ....................................................................... 8

*Kerr v. Screen Extras Guild, Inc.,*
    526 F.2d 67 (9th Cir. 1975) ........................................................................... 8

*Lund v. Affleck,*
    587 F.2d 75 (1st Cir.1978) ........................................................................... 23

*McGrath v. County of Nevada,*
    67 F.3d 248 (9th Cir. 1995) ........................................................................... 7

*Mendez v. County of San Bernardino,*
    540 F.3d 1109 (9th Cir. 2009) ....................................................................... 4

*Odima v. Westin Tucson Hotel,*
53 F.3d 1484 (9th Cir. 1995) ...................................................................... 5

*Prison Legal News v. Schwarzenegger,*
608 F.3d 446 (9th Cir. 2010) ...................................................................... 8

*See Clark v. City of Los Angeles,*
803 F.2d 987 (9th Cir. 1986) .................................................................... 23

*Serrano v. Unruh,*
32 Cal.3d 621 (1982) ................................................................................... 5

*Sethy v. Alameda County Water Dist.,*
602 F.2d 894 (9th Cir. 1979) ...................................................................... 5

*Texas Teachers v. Garland School Dist.,*
489 U.S. 782 (1989) ..................................................................................... 6

*Trevino v. Gates,*
99 F.3d 911 (9th Cir. 1996) ........................................................................ 8

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
896 F.2d 403 (9th Cir. 1990) ................................................................... 8, 9

*Ustrak v. Fairman,*
851 F.2d 983 (7th Cir. 1988) ...................................................................... 6

<u>Statutes</u>

42 U.S.C. § 1988 .............................................................................................. 3

<u>Other Authorities</u>

Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session,
reprinted in 1976 U.S. Code Cong. & Ad. News 5908 ................................. 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The June 7, 2019 jury verdict marked the culmination of extensive work and effort by Plaintiff Jayd Schroeder's counsel who sought to vindicate the constitutional rights of Plaintiff who was beaten by Defendant Officer Nicolas Parcher and Officer Steven Wright, of the City of Rialto Police Department ("Defendants").  This case involved the use of unreasonable and excessive force by the Defendants against Plaintiff in violation of the Fourth Amendment to the United States Constitution.

On March 1, 2018, Plaintiff commenced this action in federal court.  Plaintiff alleged that he was subjected to unreasonable and excessive force under the Fourth Amendment when Defendants pushed him to the ground, kicked and kneed him, punched him 4 to 6 times in the face and head, and stuck him twice with a baton, resulting in permanent loss of sight in his right eye on December 17, 2016.

On May 9, 2018, Plaintiff filed a first amended complaint.  Plaintiff also voluntarily dismissed all claims against named defendants Mark Kling (Chief of Police) and the wrongful arrest claims.  On June 29, 2018, Defendants filed their first Motion to Dismiss the *Monell* claims, which was granted on July 7, 2018.  On August 2, 2018, Defendants filed their second Motion to Dismiss.  On August 24, 2018, Attorney Darren M. Harris of Spray, Gould & Bowers, LLP substituted into the case as counsel for Plaintiff Schroeder.  On August 29, 2018, Plaintiff filed a third amended complaint which served as the operative pleading thereafter.  On January 16, 2019, Plaintiff settled with the County of San Bernardino for $7,500.[1]  Then on February 8, 2019, Defendants filed their Motion for Summary Judgment,

---

[1] Plaintiff's counsel is also not requesting any fees for work performed relative to the claims against the County of San Bernardino or any individual defendants other than Officers Parcher and Wright.

which was denied in full on March 8, 2019.  Thereafter, Plaintiff filed five (5) Motions *in Limine* and Defendants filed three (3) Motions *in Limine*.

This case was vigorously defended by the City of Rialto, Officer Nicholas Parcher and Officer Steven Wright.  From the outset, Defendants contended that the force used by Officer Nicholas Parcher and Officer Steven Wright was reasonable and that Plaintiff was not complying with officer commands, and was resisting arrest when they pushed Plaintiff to the ground, kicked and kneed him, punched him 4 to 6 times in the face and head, and stuck him twice with a baton.  The jury ultimately rejected the arguments of defense counsel, the testimony of the Defendant Officers, and the testimony of defense police practices and medical experts, in light of the overwhelming evidence presented by Plaintiff that he was complying with officer commands, and was not resisting arrest at all.  This evidence included Officer Parcher's body-cam, Officer Wright's body-cam, surveillance video from across the street of the incident location, photographs and medical records of Plaintiff's injuries, Plaintiff's testimony, and the testimony from a percipient witness, which supported a finding that the use of force against Plaintiff was unreasonable and excessive, and that Plaintiff did not fail to mitigate his damages.

Prior to the Law Offices of Dale K. Galipo getting involved in this case, the only offer of settlement made by Defendants was $7,500.  After Mr. Galipo's appearance in the case, he tried to settle the matter and Plaintiff agreed to settle for $200,000 to avoid the risk of trial.  On May 10, 2019, a letter was sent to defense counsel demanding settlement for $200,000 and specifically emphasized that the Law Offices of Dale K. Galipo's attorneys' fees alone will likely be an additional $300,000 to $500,000, which they are.  Defendants rejected Plaintiff's reasonable demand and came back with their highest offer of $50,000 including attorneys' fees. Declaration of Dale K. Galipo ("Galipo Decl.") at ¶ 23.

The case went to trial on June 4, 2019.  On June 7, 2019, the jury reached a unanimous verdict finding that Defendants used unreasonably and excessive force

on Plaintiff and that Plaintiff did not fail to mitigate his damages. On June 7, 2019, after just two hours of deliberations due to the overwhelming evidence in Plaintiff's favor, the jury returned a unanimous verdict awarding $3 million for the nature and extent of Plaintiff's injuries, Plaintiff's past and future disability, and pain and suffering experienced.

Successfully litigating police misconduct cases requires extensive experience and skill and an understanding of issues that are unique to civil rights victims as compared to general civil practice. Even experienced civil rights attorneys have difficulty overcoming the built-in bias favoring the police on the part of many jurors. Given that lawsuits to vindicate constitutional rights are in the public interest, Congress passed 42 U.S.C. Section 1988 to encourage attorneys to undertake such otherwise difficult and unprofitable cases. This statute allows recovery of reasonable attorneys' fees to attorneys who prevail in Section 1983 cases.

The favorable trial result in this case on Plaintiff's civil rights claims were the product of a tremendous amount of hard work and skill on the part of Plaintiff's counsel in preparing and presenting this case at trial. This is especially true in light of the particular difficulty presented in this case. Not only was there incident-related criminal convictions, but there was a very complex causation and mitigation of damages issues that required special focus and still to explain to a jury. Since Plaintiff prevailed on his civil rights claims, he is entitled to an award of reasonable attorney fees pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988. Itemizations of the requested attorneys' fees and costs are included in the instant filing.

The reasonableness of Plaintiff's fee request is supported by the declarations and exhibits attached thereto, which are filed concurrently herewith and incorporated herein by reference.

/ / /

## II.     LEGAL STANDARD

### A.     Legislative History of 42 U.S.C. § 1988

The Civil Rights Attorney's Fees Awards Act of 1976, codified as 42 U.S.C. § 1988, was enacted to encourage competent counsel to undertake and enforce civil rights cases.  That law provides in relevant part as follows:

> In any action or proceeding to enforce a provision of sections 1981, 1981(a), 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92-318, [or]…title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees as part of the costs . . .

The legislative history of § 1988 indicates that the public policy behind awarding fees pursuant to § 1988 was to induce competent counsel to undertake civil rights litigation by assuring them that if they were successful in vindicating federally protected rights, they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value.  *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908.

Given this purpose, courts have long established that although the statute appears to speak in permissive terms, a court's discretion to deny attorney's fees to a successful civil rights litigant "is very narrow and . . . fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2009), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014).  "Congress plainly intended that successful plaintiffs should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) (quotation marks omitted).

/ / /

/ / /

**B.    The Supreme Court's Standard in *Hensley v. Eckerhart***

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances.  The public policy considerations behind § 1988 have been reiterated in many cases.  The courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party.  *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991) (plaintiff proceeding under multiple theories for sex discrimination and prevailing on FEHA claims entitled to recover attorneys' fees).  As the Supreme Court explained, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters." *Hensley*, 461 U.S. at 435.  If the rule were otherwise, attorneys would be discouraged from taking on high risk cases such as this one.  *Id.*; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal.3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (plaintiffs cannot be faulted for their thoroughness in pleading related claims).

A fully compensatory fee is one that encourages the vindication of constitutional and statutory rights through recovery of all costs and time spent on the case, calculated at private market rates.  It must ensure that attorneys are paid for all the time they devote to the litigation.  It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered.  *See City of Riverside v. Rivera*, 477 U.S. 561 (1986).  Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986).  Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

Where "the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories," so that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley,* 461 U.S. at 435 (1983)).

Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmjian*, 987 F2d 1392, 1405 (9th Cir. 1992); *Davis v. City & County of San Francisco*, 976 F2d 1536, 1546 (9th Cir. 1992), modified on other grounds (9th Cir. 1993) 984 F2d 345; *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F2d 1319, 1326 (D.C. Cir. 1982); *Corder v. Gates*, 688 F Supp 1418, 1422 (C.D. Cal. 1988), aff'd in part and rev'd in part 947 F2d 374 (9th Cir. 1991); *see also Fair Housing of Marin v. Combs*, 285 F3d 899, 908 (9th Cir. 2002); *Henry v. Webermeier*, 738 F2d 188, 193 (7th Cir. 1984); *Schwarz v. Secretary of Health & Human Servs.*, 73 F3d 895, 908 (9th Cir. 1995).

## III.   ANALYSIS

### A.   Plaintiff Schroeder is the Prevailing Party and is Entitled to Attorney's Fees

A plaintiff is considered a prevailing party, and may recover attorney's fees, if he succeeds on any significant issue in litigation that achieves some of the benefit sought in bringing the suit. *Hensley,* 461 U.S. at 433.  The Supreme Court in *Texas Teachers v. Garland School Dist.*, 489 U.S. 782, 792 (1989) expressly held that *Hensley* sets forth the appropriate test for determining a plaintiff's prevailing party status.  In determining whether a plaintiff has succeeded on any significant issue in litigation, the *Garland* Court looked at whether the relief on the merits of plaintiff's

claim changes the legal relationship between plaintiff and defendant. Applying this test, the Court in *Farrar v. Hobby,* 506 U.S. 103, 114 (1992), held that a money judgment in favor of the plaintiff for any amount modified the defendant's behavior in a way that benefits the plaintiff by forcing the defendant to pay an amount that would otherwise not be paid.

Here, although Plaintiff Jayd Schroeder voluntarily dismissed his state law claims against Officers Parcher and Wright, as well as the claims for wrongful arrest and detention and denial of medical care, and his punitive damages claims, Plaintiff prevailed on both claims that were presented to the jury (Fourth Amendment excessive force against both Officers Parcher and Wright), including a finding that Plaintiff did not fail to mitigate his damages. The jury awarded Plaintiff a total of $3,000,000 in damages. This Court has entered an enforceable judgment against Defendants and in favor of Plaintiff. (Dkt. No. 154). Plaintiff is clearly the prevailing party in this litigation.

**B.     The Court Should Be Guided by a "Lodestar" Computation**

"In the Ninth Circuit, the method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The lodestar method multiples the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate. *Id.* (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995) (quotations omitted). After computation, courts then assess whether it is necessary to adjust the lodestar figure on the basis of the twelve *Kerr* factors. *Id.* (citations omitted). These twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length

of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). "[T]here is a strong presumption" that the lodestar calculation "is a reasonable fee." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 405 (9th Cir. 1990) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

## C.    The Relevant Legal Community Governs Reasonable Rates

The "prevailing market rates in the relevant community" governs the reasonable hourly rate for computing the lodestar amount. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) (internal quotations omitted). Within this community, the court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813 (internal quotation marks omitted); *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). "Affidavits of the plaintiffs' attorney . . . and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The hourly rates for each of the attorneys who worked on the case are addressed in detail below and in the supporting attorney declarations:

### 1.    Hourly Rate for Dale K. Galipo.

With respect to Mr. Galipo's request of $1,200 per hour, his declaration and the supporting declarations of Paul L. Hoffman, John Burton, Carl E. Douglas, Thomas E. Beck, and John Fattahi attest to his accomplishments as a civil rights attorney and as an experienced and accomplished trial attorney.

Mr. Galipo graduated with a B.B.A. from the University of Michigan in Ann Arbor, Michigan in 1981. He attended law school at UCLA from 1981 to 1984. Galipo Decl. ¶ 3. Since 1991, he has managed his own law firm specializing in major personal injury and wrongful death cases and criminal defense. *Id*. ¶ 4. Due to his experience in personal injury and criminal defense law and his significant trial experience, prosecuting civil rights actions involving police misconduct causing serious injury or death was a natural transition. *Id.*

In 2015 Mr. Galipo had a trial in Federal Court before the Honorable Michael Fitzgerald in the case of *Ramirez, et al., vs City of Oxnard, et al*. There was no offer of settlement and cause of death was highly disputed. The decedent swallowed an eight ball of "meth" before the police responded. Plaintiffs contended the decedent died of restraint asphyxia due to improper and excessive police restraint. The defense argued that the restraint was not excessive and that death was caused by drug intoxication. The plaintiffs prevailed obtaining a $2.925 million-dollar jury verdict. Judge Fitzgerald awarded Mr. Galipo $900 per hour in the related attorney fee motion under 42 U.S.C. § 1988. Galipo Decl. at ¶ 5.

As of 2015, I had been involved in numerous civil and criminal trials and had obtained numerous recognitions for my work in civil rights, including receiving the Defender of the Constitution Award in 2012 from the Inland Empire Chamber of the Federal Bar Association. Galipo Decl. at ¶ 6.

Some of my trial and settlement accomplishments were listed in my Declaration attached to the attorney fee motion before Judge Fitzgerald in 2015. I am not going to repeat everything in the prior declaration, but I am incorporating the information therein in support of this motion. Galipo Decl. at ¶ 7.

Since September 2015, I have handled numerous civil rights cases and have obtained numerous substantial settlements and jury verdicts on behalf of my clients. I believe my contribution to the civil rights community in handling these challenging cases and prevailing the majority of the time justifies a substantial

increase in my court-awarded hourly attorney fee award from $900 per hour, an award I was given approximately four (4) years ago, to $1,200 per hour.  Galipo Decl. at ¶ 10.

Some of the cases that I have successfully settled for my clients since my fee award from Judge Fitzgerald in 2015 include:  $4.9 million settlement in *Thomas v. City of Fullerton* (excessive force/asphyxiation) (November 2015); $2.5 million settlement in *Beierschmitt v. County of Los Angeles* (police shooting), (January 2016); $2.8 million settlement in *Martinez v. County of Los Angeles* (police shooting), (April 2016); $3.7 million settlement in *R.S. v. City of Santa Ana* (police shooting), (July 2016); $2 million settlement in *Opsitnik v. City of Long Beach* (police shooting), (August 2016); $3.4 million settlement in *Garlic v. County of Kern* (restraint asphyxia), (September 2016); $3.3 million settlement in *Berry v. County of Los Angeles* (police shooting), (October 2016); $2.5 million settlement in *Navas v. City of Los Angeles* (police shooting), (January 2017); $5.2 million settlement in *Cole v. City of Los Angeles* (wrongful conviction), (January 2017); $1.1 million settlement in *Mueller v. County of Orange* (police shooting), (March 2017); $2 million settlement in *Powell v. City of Barstow* (police shooting), (May 2017); $1.9 million settlement in *L.R. v. County of Riverside* (police shooting), (May 2017); $1.9 million settlement in *Rodriguez v County of Riverside* (police shooting), (May 2017); $2.5 million settlement in *Alcala v. West Valley Detention Center* (excessive force/denial of pre-trial detainee's rights), (July 2017); $1.9 million settlement in *Lozano v. County of San Bernardino* (denial of medical attention) (January 2018); $1.45 million settlement in *Hernandez v. City of Los Angeles* (excessive force/asphyxiation), (February 2018); $2.7 million settlement in *Hernandez v. County of Los Angeles* (police shooting), (February 2018); $1.5 million settlement in *Navarro v. County of Riverside* (police shooting), (March 2018); $2.65 million settlement in *Kaur v. City of Lodi*  (police shooting), (June 2018); $2.75 million settlement in *Briones v. City of Ontario* (excessive

PLAINTIFF SCHROEDER'S MOTION FOR ATTORNEYS' FEES

force/asphyxiation), (June 2018); $4.6 million settlement in *C.M. v. County of Los Angeles* (police shooting), (August 2018); $3.75 million settlement in *V.W. v. County of Los Angeles* (police shooting), (October 2018); $1.5 million settlement in *L.M. v City of Redding* (excessive force), (April 2019); $1.2 million settlement in *Cordova v. City of Stockton* (excessive force/asphyxiation), (April 2019); $2.0 million settlement in *Gibson v. City of Long Beach* (police shooting) (April 2019); $2.6 million settlement in *Phillips v. County of San Bernardino* (police shooting), (April 2019); and $3.0 million settlement in *Flores v. County of Los Angeles* (911 call center failure) (May 2019).  Galipo Decl. ¶ 11.

Approximately seventy-five percent (75%) of my cases settle.  The cases that do not settle are usually my most difficult liability cases.  The majority of the civil rights cases that I have brought to trial since 2015 have had little or no offers of settlement by the defendants.  Galipo Decl. ¶ 12.  I prevailed in several civil rights trials in late 2015 and 2016.  Galipo Decl. ¶ 13.

In the last approximately two years, I have prevailed in fourteen (14) jury trials.  Twelve of the jury trials were civil rights cases.  Two of the trials were criminal cases in which there was a related civil rights case where the plaintiff was shot by the police and then charged with various crimes, including assault with a deadly weapon and resisting by force.  My specific trial successes in the last two years include: $3.05 million jury verdict in *Amaya v. County of Los Angeles* (police shooting, no offer), (May 2017); $2.5 million jury verdict in *Borges v Humboldt County* (denial of medical care, no offer), (August 2017); $6.5 million jury verdict in *Rose v. County of Sacramento* (police shooting, no offer), (September 2017); $3.5 million jury verdict in *Herrera v. City of Los Angeles* (police shooting, no offer), (October 2017); $200,000 ($1.755 million settlement with statutory fees) jury verdict after re-trial in *Huizar v. City of Anaheim* (police shooting, no offer), (October 2017); $5.5 million jury verdict in *Mears v. City of Los Angeles* (excessive force/taser-related death, no offer), (October 2017); $350,000 settled during trial in

*Lopez v. City of Inglewood* (restraint asphyxiation, no offer) (January 2018); Criminal case of *People v Fajardo*, charged with five (5) felony counts and received a hung jury (6-6) on all felony counts. All felony counts were thereafter dismissed. (January/February 2018) (The civil case is pending); $1.45 million settlement following jury verdict on liability in *Jimenez v. City of Los Angeles* (excessive force/restraint asphyxiation, no offer) (February 2018); $33.5 million jury verdict in *Archibald v. County of San Bernardino* (police shooting, no offer) (March 2018); Criminal case of *People v. Juarez* (eighteen (18) acquittals, convicted on only one felony and one misdemeanor) (January/February 2019) (The civil case is pending); $4.75 million jury verdict in *Estate of Casimero Casillas v. City of Fresno* (police shooting, no offer) (February 2019); $3.4 million jury verdict in *Craig v. County of Orange* (police shooting, no offer) (April 2019); and $3 million jury verdict in *Schroeder v. City of Rialto* (excessive force, offer of $50,000) (June 2019). Galipo Decl. ¶ 14.

In 2018, Mr. Galipo was recognized by CAALA for my trial successes and nominated for Trial Lawyer of the Year. There was a run-off vote for Trial Lawyer of the Year between Mr. Galipo and another attorney who had been nominated five times previously. Mr. Galipo was honored to be voted the runner-up to such a prestigious award. Galipo Decl. ¶ 15. Additionally, in 2018, Mr. Galipo was contacted by associate professor Dennis Cota, who has become a magistrate judge in Redlands, California, and honored to have the Top Trial Advocacy Award for the Martin Luther King, Jr. Moot Court Competition to be given in Mr. Galipo's name. Galipo Decl. ¶ 16.

In 2019, Mr. Galipo was elected to the American College of Trial Lawyers. Galipo Decl. ¶ 17. Further in 2019, Mr. Galipo was honored by UCLA to give a lecture to students and faculty for the Irving H. Green Memorial Lecture. Past recipients of the award included Johnnie Cochran, Jr. Galipo Decl. ¶ 18. Mr.

Galipo has also been invited to speak to the law students at U.C. Irvine and UCLA on several occasions.  Galipo Decl. ¶ 19.

In 2019, Mr. Galipo was honored to be elected to the Inner Circle of Advocates, considered to represent the top one hundred civil plaintiff's attorneys in the United States.  There are only approximately seventeen (17) active members in the entire state of California, including such prominent plaintiff attorneys as Bruce A. Broillet, Brown Greene, Lawrence P. Grassini, Thomas V. Girardi, and Brian J. Panish.  Galipo Decl. ¶ 20.

Additionally, this year CAALA has selected Mr. Galipo to speak on the Masters Panel in recognition of my skill and accomplishments as a trial attorney.  There will be approximately eight hundred attorneys present for the presentation, which will take place in Las Vegas, Nevada at the CAALA annual convention.  Galipo Decl. ¶ 21.

In the last approximately eight (8) years, Mr. Galipo has had twelve (12) published opinions in civil rights cases, and has argued numerous appellate cases before the Ninth Circuit Court of Appeals.  Galipo Decl. ¶ 24.

Given that top litigators at top law firms are billing their clients between $1,200 to $1,800 per hour for trial work and preparation, Mr. Galipo is respectfully requesting an hourly fee award of $1,200 based on his trial experience and accomplishments as a civil rights attorney.  Galipo Decl. ¶ 25; Burton Decl. ¶ 12; Douglas Decl. at ¶ 9; Beck Decl. at ¶ 5; Fattahi Decl. at ¶ 2.

Further, Mr. Galipo is considered nationally "in a class by himself" by other attorneys of comparable experience in the civil rights field.  Burton Decl. ¶ 10.  "Mr. Galipo has achieved the summit of our profession in his dedication, knowledge and trial skills in police misconduct actions, particularly excessive force cases." *Id.*  Mr. Galipo is has a reputation of possessing the upmost integrity and skill, with legendary tenacity in civil rights litigation.  Douglas Decl. at ¶ 9.

/ / /

## 2.    *Hourly Rate for Darren M. Harris.*

A reasonable rate for the extensive work performed by Darren M. Harris on this case is $750 per hour.  The attached Declaration of Darren M. Harris ("Harris Decl.") and the supporting declarations of other counsel in the community attest to his accomplishments as an experienced and accomplished attorney.

Mr. Harris was retained by Plaintiff Schroeder in August 2018.  From that point forward, through trial, Mr. Harris handled all day to day responsibilities in the case from drafting and responding to written discovery, review and analysis of all reports, videos, photographs, and other documents pertinent to Mr. Schroeder's claims.  Mr. Harris handled each of the depositions, interviewed and retained the expert witnesses, interviewed and met with each of the witnesses with knowledge of the facts of the case, attended meetings at the site of the incident, reviewed all medical records of Mr. Schroeder, and performed legal research concerning excessive force and qualified immunity.  Mr. Harris also prepared all opposing papers to the Motion for Summary Judgment filed by Defendants' Parcher and Wright.  Mr. Harris prepared the motions *in limine* and the oppositions to Defendants' *limine* motions.  Mr. Harris prepared pre-trial documents including witness lists, pretrial conference order, jury instructions, exhibit lists, pretrial exhibit stipulation, etc.  Mr. Harris appeared at all Court hearings and proceedings since appearing on this case.  Mr. Harris was present during the entire trial.

Mr. Harris has over 21 years of experience as a litigating attorney.  He has been licensed to practice law in California since 1997.  He joined the law firm of Spray, Gould & Bowers LLP in 1998 where he has spent his entire career.  Since that time, he has been a member of the American Bar Association, the California State Bar, the San Bernardino County Barristers Association, the Orange County Bar Association, the Los Angeles County Bar Association, California Employment Lawyers Association, Consumer Attorneys of Los Angeles, as well as other organizations.  He became a partner with Spray, Gould & Bowers, LLP in 2002.

Mr. Harris has been involved in various areas of civil litigation with extensive jury trial experience in the areas of products liability, premises liability, civil rights violations, and employment related issues.  Specifically, he has handled numerous matters involving civil rights (§1983) and constitutional violations (in both state and federal court), which have included cases against various governmental and municipalities involving shootings, false imprisonment, wrongful detention, willful suppression of evidence, deaths, paraplegia and other catastrophic injuries.

Mr. Harris has personally handled numerous cases involving civil rights and constitutional violations, both state and federal, on a contingent fee basis since joining Spray, Gould & Bowers in 1998.  Over 10 years ago (in 2008) Judge Randall Wilkinson of the O.C.S.C. (case no. 30-2008-00105121-CU-OE-CJC), approved a post-trial motion for attorney's fees in the amount of $204,703.75.  Judge Wilkinson approved Mr. Harris's hourly rate of $450 at that time.  Since 2014, the most recent several cases involving §1983 civil rights violations that Mr. Harris has resolved by settlement resulted in an hourly rate of $752.17, $766.94, $626.08, $833.33, $696.51, and $879.47, calculated by dividing the total attorney fees generated by the number of hours expended on the case.  These fees, which average $759.08 per hour, were obtained in cases that were settled, and as such, these amounts represent attorney fees voluntarily agreed to by those defense counsel and his clients in those cases.

### 3.    Hourly Rate for Marcel F. Sincich.

A reasonable rate for the work of Marcel F. Sincich performed on this case is $400 per hour.  This rate is supported by his declaration and in the declarations of Dale K. Galipo, Carl E. Douglas, and John Burton, attesting to his experience and ability as a civil rights attorney.

Mr. Sincich has had the primary responsibility for the day-to-day management of this case from April 2019 through the present.  His work on this

case included legal research; preparation of pretrial documents; briefing of pre-trial issues and formulation of trial strategy; evidence review and summary, including transcribing audio and video files, creating screenshots of videos, review and summarization of depositions and preliminary hearing transcript; trial preparation and assistance during trial, including creation of demonstrative presentations, media, and research; research for and drafting of motion for attorneys' fees, and preparing the memorandum of costs. Declaration of Marcel F. Sincich ("Sincich Decl.") at ¶ 3.

Mr. Sincich served four years' active duty in the United States Marine Corps where he was forward deployed on three occasions and awarded the Combat Action Ribbon, Navy and Marine Corps Commendation Metal, and Purple Heart. Sincich Decl. ¶ 5. Upon ending active service, Mr. Sincich served as an Emergency Medical Technician for over two years, and was an instructor in weapons, tactics, and the use of force for the United Stated Navy for over six years. *Id.*

In May 2012, Mr. Sincich received a Bachelor of Arts in Philosophy, focusing in Ethics, from American Military University. Sincich Decl. ¶ 6. With his unique background in weapons, tactics, use of force, emergency medical aid, and ethics, as well as his dedication to support and defend the Constitution of the United States of America, Mr. Sincich followed his calling to further defend the Constitution through the practice of law. *Id.*

Mr. Sincich received his Juris Doctorate from Pepperdine University School of Law in May 2017, where he was a recipient of the Terry M. Giles Honor Scholarship, Patti Paniccia Scholarship, and Dean's Scholarship. Sincich Decl. ¶ 7. Mr. Sincich studied at the Straus Institute of Dispute Resolution, was the President of Pepperdine's Moot Court Trial Advocacy Executive Board, member of the Moot Court Trial Advocacy Team, and member of the Moot Court Appellate Advocacy Team. *Id.* Mr. Sincich was awarded the Parris Award for Excellence in Character, and was a nominee for Excellence in Courage, and Excellence in Leadership. *Id.*

Mr. Sincich won the Cipolla Closing Argument Competition, and participated in five trial competitions and four appellate competitions. *Id.* Mr. Sincich also received the Barristers Award for trial advocacy and was selected to conduct presentations to newly-admitted and first-year law students regarding Pepperdine's advocacy programs. *Id.*

During the summer of 2015, Mr. Sincich served as a judicial extern for the Honorable Otis D. Wright, II in the United States District Court for the Central District of California. Sincich Decl. ¶ 8. Then, during the summer of 2016, Mr. Sincich worked as a summer associate at the Law Offices of Dale K. Galipo, where he received significant training and experience conducting legal research, drafting interoffice memoranda in civil rights litigation and criminal defense practice areas, assisting with witness interviews, pre-trial matters, discovery request and document review. *Id.* Mr. Sincich continued working at the Law Offices of Dale K. Galipo through the spring of 2017, where his responsibilities increased to drafting pleadings, various affirmative and responsive motions, and pre-trial documents. *Id.*

Mr. Sincich was admitted to the California Bar in December 2017, and joined the Law Offices of Dale K. Galipo as a full-time litigation associate, where he has gained substantial experience in civil rights litigation in all its aspects, from case evaluation through post-trial and appellate matters. Sincich Decl. ¶ 9. Mr. Sincich has drafted complaints, discovery requests, responses and motions, pre-trial documents, including jury instructions, verdict forms, and *voir dire*, drafted summary judgment motions and oppositions, motions *in limine*, and has drafted both opening and answering Ninth Circuit appellate briefs. *Id.* Mr. Sincich has personally handled numerous mediations and settlement negotiations, routinely assisted with trial preparation and strategy, and conducted numerous depositions of defendant officers, experts, and persons most knowledgeable. *Id.* Mr. Sincich is currently responsible for day-to-day management of ten federal civil rights cases, as well as assisting with the management of five additional cases, and managing the

firm's case intake.  Sincich Decl. ¶ 10.  In each of these cases, the alleged civil rights violation resulted in serious bodily injury or death.  *Id.*  With over three years' experience at this firm, Mr. Sincich has assisted with over fifty civil rights cases, most of which that resolved, resulted in settlement or jury verdict.  Sincich Decl. ¶ 11.

Mr. Sincich has routinely contributed to Pepperdine School of Law's trial advocacy program by mentoring student advocates, coaching them through case strategy, and judging moot rounds.  Further, Mr. Sincich has judged and assisted in the preparation for multiple trial competitions, including the AAJ Student Advocacy Competition, Texas Young Lawyers Association Competitions, and the Mockingbird Challenge National Trial Competition.  Sincich Decl. ¶ 12.

Based on his education, experience, and abilities, Mr. Sincich's reasonable hourly rate is $400 per hour.  *See* Sincich Decl. ¶ 12; *see Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1057 (C.D. Cal. 2014)

### 4.    Hourly Rate for Renee V. Masongsong

A reasonable rate for the work of Mrs. Masongsong performed on this case is $550 per hour.

As of this date Mrs. Masongsong has so far spent 15.1 hours of billable time in connection with tasks reasonably necessary to the favorable resolution of this action.  Declaration of Renee V. Masongsong ("Masongsong Decl.") ¶¶ 24; Ex. 1.

Ms. Masongsong work on this case primarily included the following: reviewing the record to consider this office's involvement in the case; associating Mr. Galipo's office into the case; assisting in the drafting of the pre-trial documents, including the proposed pretrial conference order, the jury instructions and objections thereto, and providing a final review of these documents prior to filing; consulting attorney Darren Harris on issues pertaining to civil rights excessive force cases based on my six years of experience working exclusively on civil rights cases,

including consulting on issues pertaining to the drafting of the opposition to the motion for summary judgment.  Masongsong Decl. ¶ 3.

In August 2007, Ms. Masongsong received a Bachelor of Arts in English Writing and a Bachelor of Arts in Psychology from the University of Tennessee at Chattanooga, where she graduated *Magna Cum Laude* and from the University Honors Program.  At the University of Tennessee at Chattanooga, Ms. Masongsong was on the Dean's list each semester and was the recipient of the Hope Scholarship and the Brock Scholarship, a full-tuition merit-based scholarship.  During her undergraduate studies, Ms. Masongsong was a member of the following honor societies: Mortar Board; Golden Key (Treasurer); Sigma Tau Delta; Psi Chi (Public Relations Chair); Phi Eta Sigma (Secretary); Alpha Lambda Delta (Secretary).  Masongsong Decl. ¶ 5.

Ms. Masongsong received a Juris Doctorate degree from Pepperdine University School of Law in May 2011, where she graduated *Magna Cum Laude* and as a member of the Order of the Coif.  During her studies at Pepperdine, Ms. Masongsong was a member of the Pepperdine Law Review, the Honor Board, and Phi Delta Phi (Historian).  Ms. Masongsong was also on the Dean's list each semester and was the recipient of the Pepperdine Dean's Merit Scholarship, the Di Loreto-Odell S. McConnell Merit Scholarship, and the Delman and Krug Endowed Merit Scholarship.  During my spring 2010 semester, Ms. Masongsong served as a Teaching Fellow to Professor Samuel Levine as part of the law school's academic support program.  Ms. Masongsong's duties as a Teaching Fellow included leading review sessions, holding office hours, conducting substantive review sessions, and tutoring students for Professor Levine's Criminal Law class.  During my fall 2010 semester, Ms. Masongsong studied abroad through the Pepperdine London Program, where she participated in moot court.  Throughout my law school career, Ms. Masongsong also received a CALI Excellence for the Future Award in the following

courses: Criminal Law; Civil Procedure II; Torts II; Evidence.  Masongsong Decl. ¶ 6.

During my fall 2009 semester at Pepperdine University School of Law, Ms. Masongsong served as a full-time judicial extern to the Honorable Alex Kozinski in the United States Court of Appeals for the Ninth Circuit, where she analyzed the lower court record in numerous cases, conducted legal research, drafted bench memoranda, and produced bench books for oral arguments.  During the summer of 2009, Ms. Masongsong worked as a summer associate at Bradley Arant Boult Cummings LLP, where she conducted legal research, drafted interoffice memoranda in various civil defense litigation practice areas, and assisted senior attorneys in drafting briefs.  Also during the summer of 2009, Ms. Masongsong served as a judicial extern for the Honorable Karon O. Bowdre in the United States District Court for the Northern District of Alabama, where she drafted social security opinions and also gained significant training and experience by observing criminal and civil trials, hearings, and pretrial conferences.  During the summer of 2010, Ms. Masongsong worked as a summer associate at Gibson, Dunn & Crutcher LLP, where she gained significant experience and training with respect to trial advocacy and conducting depositions.  Masongsong Decl. ¶ 7.

Ms. Masongsong was admitted to the California Bar in December 2011. Between November 2011 and early 2013, Ms. Masongsong worked as a litigation associate at Gibson, Dunn & Crutcher LLP, where she conducted privilege reviews and performed pro bono work for The Alliance for Children's Rights, Kids in Need of Defense, Public Counsel and Legal Aid Foundation of Los Angeles.  In April 2013, Ms. Masongsong joined the Law Offices of Dale K. Galipo, where she currently works as a senior associate attorney.  Masongsong Decl. ¶ 8.

During the past six years at the Law Offices of Dale K. Galipo, Ms. Masongsong have worked exclusively on civil rights cases involving the use of excessive force or denial of medical care resulting in death or great bodily injury.

Ms. Masongsong is currently responsible for the day-to-day management of twenty federal civil rights cases.  Over the last six years, Ms. Masongsong has been the primary associate attorney responsible for the day-to-day matters of approximately sixty-three state and federal civil rights cases and has also assisted colleagues on approximately twenty-eight additional civil rights cases.  During Ms. Masongsong's time at the Law Offices of Dale K. Galipo, she gained substantial experience in all phases of civil rights litigation, from case intake to post-trial and appellate matters.  Ms. Masongsong has served as second chair in four trials, and examined witnesses at trial.  While at the Law Offices of Dale K. Galipo, Ms. Masongsong has also been the associate attorney responsible for managing the firm's pre-litigation department and mentoring legal interns.  Masongsong Decl. ¶ 9.

Ms. Masongsong has been the day-to-day managing attorney in numerous cases with Mr. Galipo that have settled with substantial awards, including the following: $1.1 million settlement in *Mueller v. County of Orange* (police shooting), (March 2017); $2 million settlement in *Powell v. City of Barstow* (police shooting), (May 2017); $1.9 million settlement in *L.R. v. County of Riverside* (police shooting), (May 2017); $1.9 million settlement in *Lozano v. County of San Bernardino* (denial of medical attention) (January 2018); $2.75 million settlement in *Briones v. City of Ontario* (excessive force/asphyxiation), (June 2018); $4.6 million settlement in *C.M. v. County of Los Angeles* (police shooting), (August 2018); and $1.45 million settlement following jury verdict on liability in *Hernandez v. City of Los Angeles* (excessive force/restraint asphyxiation, no offer) (February 2018).  Masongsong Decl. ¶ 10.

Ms. Masongsong is also admitted to practice in the United States District Court for the Eastern District of California and the United States District Court for the Northern District of California.  Masongsong Decl. ¶ 11.

Based on her education, experience, and abilities, Ms. Masongsong's reasonable hourly rate is $550 per hour.  Masongsong Decl. ¶ 12.

PLAINTIFF SCHROEDER'S MOTION FOR ATTORNEYS' FEES

**D.      The Number of Hours Claimed is Reasonable.**

Plaintiffs' total basic lodestar fees, determined by multiplying the number of hours expended by the hourly rate of each attorney are as follows:

| Attorney | Rate | Hours | Total |
| --- | --- | --- | --- |
| Dale K. Galipo | $1,200 | 257.8 | $309,360 |
| Darren Harris | $750 | 785.8 | $589,350 |
| Marcel F. Sincich | $400 | 181 | $72,400 |
| Renee V. Masongsong | $550 | 15.1 | $8,305 |
|  |  | Total: | $979,415.00 |

The extensive work undertaken by Plaintiff's counsel during the discovery process, in taking and defending numerous depositions, and all of the pretrial work necessary to bring this case to trial are listed in the compilation of time records attached to the declarations of the above attorneys.  All times listed in the time records were reasonably spent in securing a successful outcome in this case.

A tremendous amount of time went into this case.  Summary of documents filed, motion for summary judgment, motions *in limine*, depositions, pre-trial documents, trial preparation, trial, and post-trial motions.  The result speaks for itself.

Prior to filing this motion, counsel have reviewed their records and exercised billing judgment and written off time spent on administrative or semi-clerical tasks, or tasks that were not sufficiently productive.  Counsel has made their best efforts to exclude work that would not be billed to an ordinary fee-paying client.  The action was litigated efficiently and expeditiously, without needless expenditure of time or unnecessary work as evidenced by the efficiency of the trial.

Police misconduct lawsuits advance the significant public benefit of deterring abuse by law enforcement officers who would otherwise operate free of any

meaningful restraints.  The decline of police beatings – "flashlight therapy" and other forms of naked brutality – in California over the last thirty years has been directly attributed to the work of the plaintiffs' police misconduct bar.  The instant case exemplifies that, but for competent willing counsel, police misconduct would have gone without consequences in this instance.

### E.    Plaintiff is Entitled to Fees for Litigating the Instant Motion

In addition to the attorney's fees derived from legal work performed in preparing and litigating a case, Plaintiff is entitled to attorneys' fees for their time spent establishing their right to attorneys' fees in the amount requested.  *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); *see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee.").

Plaintiffs' counsel will include in the compilation of the total hours associated with the instant motion, including a time estimate regarding preparation for and appearances in their reply brief.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff Schroeder respectfully requests that the Court award attorneys' fees in the amount of $979,415.  Plaintiff also requests that the Court award him attorneys' fees for work performed in the litigation of the instant motion for attorney fees, and up to and including all the work on the reply, as will be stated in the reply papers.

DATED: June 21, 2019                                **LAW OFFICES OF DALE K. GALIPO**
                                                                   **SPRAY, GOULD & BOWERS LLP**


                                                                    /s/      Marcel F. Sincich
                                                                    Dale K. Galipo
                                                                    Darren M. Harris
                                                                    Marcel F. Sincich
                                                                    *Attorneys for Plaintiff*